IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| FALL LINE PATENTS, LLC, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 6:18-CV-00407-RWS (LEAD CASE) |
| ZOE'S KITCHEN, INC., ET AL, | § § | |
| Defendants. | § § § | |

**ORDER**

Before the Court is the McDonald's Defendants' Motion for Leave to File Motion to Dismiss and to Expedite Briefing. Docket No. 325. In this motion, McDonald's seeks leave to file their motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3) for lack of subject matter jurisdiction in this case. *Id.* at 1.[1] McDonald's attached their proposed motion to dismiss to their motion for leave to file. Docket No. 325-5.

**I.    BACKGROUND**

In support of their motion for leave to file, which McDonald's filed more than six months after the close of fact discovery and less than three weeks before trial, McDonald's explains that it "recently uncovered facts showing that there is no subject matter jurisdiction for this action, that the defect is not curable, and that [] the case must be dismissed, regardless of the stage of the proceedings." Docket No. 325 at 1–2 (citing Fed. R. Civ. P. 12(h)(3)). McDonald's proceeds to explain that Fall Line's representation that "it is the current owner of the asserted '748 Patent

---

[1] Defendant's motion also requests that the Court enter an expedited briefing schedule on this issue. This request is moot in view of Fall Line's response (Docket No. 326) and sur-reply (Docket No. 342).

. . . . by way of an assignment from Ediche, LLC on March 3, 2017" was "materially incorrect" and "obstructed Defendants' ability to fully discover Fall Line's defective claim of ownership . . . at an earlier time in this litigation." *Id.* at 2–3. More specifically, in McDonald's June 27, 2023 letter to Fall Line, counsel explained:

> [T]he facts show that MacroSolve, Inc. did not exist or possess the '748 Patent when the purported assignment to Ediche, LLC was executed on June 4, 2014. Instead, MacroSolve merged with and into Drone Aviation Holding Corp. on April 30, 2014, transferring all of MacroSolve's assets, including the '748 Patent, and ending the existence of MacroSolve weeks before it purported to assign the '748 Patent to Ediche.

Docket No. 325-2 at 2. Based on Fall Line's "material omissions," McDonald's contends that "good cause exists to grant leave for Defendants' to file [their] Motion to Dismiss outside of the deadline for dispositive motions . . . ." Docket No. 325 at 3. Ultimately, McDonald's argues that this ownership issue creates a constitutional standing issue that the Court must address because Fall Line must have had legal title to the '748 patent before filing this action. *See generally* Docket No. 329.

Fall Line responds that "McDonald's motion misrepresents both the controlling law and the controlling facts." Docket No. 326 at 2. Fall Line explains that McDonald's relies on precedent that the "Federal Circuit has since repudiated" to transform a belated attack on Fall Line's ownership into "an Article III standing issue that implicates the subject matter jurisdiction of the Courts and can thus be raised at any time." *Id.* at 2–3. Under the controlling law, Fall Line contends that "there is no good argument that this case should be dismissed for lack of standing and subject-matter jurisdiction or that the Court must now hear McDonald's new ownership challenge." *Id.* at 3. Rather, Fall Line contends that McDonald's carries the burden to raise any ownership challenge in this case and that a complete chain of assignments has been recorded with the Patent Office. *Id.* at 4. Fall Line argues McDonald's did not argue lack of ownership in their earlier motion to dismiss

for lack of standing (Docket Nos. 63, 70), did not raise lack of ownership in any discovery response, did not address any lack of ownership in their expert reports and did not move for summary judgment based on lack of ownership. *Id.* at 5.

Beyond "McDonald's . . . incorrect statement of the governing law," Fall Line contends that McDonald's motion "relies on an equally incorrect statement of the facts." *Id.* at 6. Fall Line explains that "McDonald's repeatedly refers to 'Drone Aviation,' but fails to mention that there were actually two different 'Drone Aviation' companies: (1) Drone Aviation Holding Corp. (a wholly owned subsidiary of MacroSolve formed for the purposes of effectuating an eventual merger with Drone Aviation Corp.), and (2) Drone Aviation Corp. (an operating company not affiliated with MacroSolve that eventually merged with MacroSolve)." *Id.* at 7. "As shown in the SEC filings on which McDonald's itself relies, the merger with Drone Aviation Corp. was completed on March 26, 2015, **nine months after** MacroSolve assigned the [']748 Patent to Ediche on June 4, 2014." *Id.* (citing Docket No. 326-2 at 13[2]). Fall Line explains that when it "responded to McDonald's eleventh-hour discovery requests by explaining that MacroSolve transferred the

---

[2] Docket No. 326-2 is a copy of SEC Form S-1 for Drone Aviation Holding Corp. In the section providing a prospectus summary of the organization, the following is provided:

> Drone Aviation Holding Corp. has two wholly owned subsidiaries: Lighter Than Air Systems Corp. ("LTAS") and Drone AFS Corp. ("AFS"). Drone Aviation Holding Corp. was incorporated in Nevada on April 17, 2014, as a wholly owned subsidiary of MacroSolve, Inc., an Oklahoma corporation ("MacroSolve"), and effective April 30, 2014, in order to consolidate our operations into an entity incorporated in Nevada, MacroSolve merged with and into us. On June 3, 2014, we acquired Drone Aviation Corp. through a share exchange transaction, and on March 26, 2015, Drone Aviation Corp. merged with and into us. As a result of the share exchange and merger with Drone Aviation Corp., we acquired Drone Aviation Corp.'s subsidiary, LTAS. AFS became our subsidiary upon its formation on July 9, 2015.

Docket No. 326-2 at 13.

[']748 Patent to Ediche (which in turn transferred it to Fall Line) ***before*** the merger with Drone Aviation was completed, it was referring to the actual pre-existing business entity Drone Aviation Corp. that merged with MacroSolve." *Id.* (emphasis in brief). Fall Line explains that "[t]here is no dispute that the assignment from MacroSolve to Ediche occurred ***before*** the merger of Drone Aviation Corp. and MacroSolve." *Id.* (emphasis in brief).

Fall Line further explains that when Kendall Carpenter, the CFO of Drone Aviation Holding Corp. (who was also the former CFO of MarcoSolve, Inc.), executed the assignment from "MacroSolve, Inc." that she was "necessarily intending to refer to the corporate entity that had just been created as a result of the merger of MacroSolve into its wholly owned subsidiary, Drone Holding Corp." Docket No. 326 at 9. Fall Line asserted that the companies' intent is supported "by the[ir] subsequent conduct," and that, since the assignment of rights from Ediche, LLC (which was assigned patent rights from MacroSolve, Inc.) to Fall Line Patents, LLC, "Fall Line paid, and Drone Aviation Holding Corp. [has] accepted, the royalties called for by the assignment agreement . . . ." *Id.* (citing Docket No. 326-4).

### A.   Analysis

The Docket Control Order set a February 14, 2023 deadline for filing dispositive motions. Docket No. 170 at 3. Under Federal Rule of Civil Procedure 16(b)(4), a party seeking to modify the court's scheduling order must show good cause. Courts in this circuit generally consider four factors when determining whether good cause exists: (1) the explanation for the failure to timely move for the relief sought; (2) the importance of the motion; (3) potential prejudice in allowing the motion; and (4) the availability of a continuance to cure such prejudice. *See, e.g.*, *Equal Emp. Opportunity Comm'n v. Serv. Temps Inc.*, 679 F.3d 323, 334 (5th Cir. 2012).

Good cause does not support McDonald's motion for leave to file their motion to dismiss. Here, the first two factors—the explanation for the failure to timely move for the relief sought and the importance of the motion—were particularly relevant to the Court's determination.

***First***, counsel for McDonald's has provided no reasonable explanation—in their briefing or during the hearing—as to why they waited six months after the close of fact discovery and less than a month before trial to raise this issue. *See, e.g.*, Docket No. 340 at 63:16–65:14. Nor does McDonald's offer a feasible explanation as to why this matter was not investigated more than four years ago when McDonald's joined the other defendants in their motion to dismiss for lack of standing—a motion that plainly raised a question of ownership (*see* Docket Nos. 63, 70). *Id.*[3]

McDonald's discovery of Fall Line's purported ownership issues was uncovered when McDonald's counsel was searching ***publicly available documents*** only a few weeks ago, on June 23, 2023. Docket No. 325-1, ¶ 2, Docket No. 340 at 65:12–14 ("It wasn't until more recently in preparing for trial that we decided to look at the SEC filings . . . ."). McDonald's discovery occurred one day after the parties filed their proposed pretrial order, where McDonald's stipulated that "Fall Line owns all right, title, and interest to the '748 patent, including all rights to sue and collect damages for all past, ongoing, and future infringement." Docket No. 315 at 6. Four days after discovering these public documents, McDonald's counsel sent a letter to counsel for Fall Line disclosing McDonald's newly-discovered information. Docket No. 325-1, ¶ 5.

---

[3] At the hearing, McDonald's argued that they discovered this issue because "Drone Aviation" only came up in "three places" and that "[n]othing about Drone Aviation's filings" were included in MacroSolve's SEC filings. Docket No. 340 at 58:14–60:3, 103:11–21. But McDonald's representations to the Court were inaccurate. One of the places Drone Aviation was disclosed to McDonald's was in Fall Line's response to an interrogatory on ownership and McDonald's own counsel later admitted Drone Aviation *was* mentioned in MacroSolve's SEC filings. *Id.* at 58:14–60:3, 86:10–87:4, 105:4–106:7. McDonald's provides no reasonable explanation as to why it did not (or could not) investigate this issue, including the relationship between MacroSolve and Drone Aviation earlier.

This background raises the following question: Why wasn't McDonald's counsel searching for this information earlier? Perhaps a more appropriate time for counsel to peruse public documents would have been in spring of 2019, when McDonald's challenged, for the first time, Fall Line's ownership interest in the '748 Patent. *See* Docket Nos. 63, 70. Or when Fall Line disclosed Drone Aviation in response to McDonald's interrogatory relating to ownership. Docket No. 304 at 58:1460:3. After all, uncovering such issues has always been McDonald's burden to bear. *See SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1327–28 (Fed. Cir. 2010) (finding that the burden of establishing a break in the chain-of-ownership recorded by the U.S. Patent and Trademark Office lies with the alleged infringers).

McDonald's lack of diligence fails to support a finding of good cause. *See Allergan, Inc. v. Teva Pharms. USA, Inc.*, No. 2:15-CV-1455-WCB, 2017 WL 119633, at *3 (E.D. Tex. Jan. 12, 2017) ("The most important factor bearing on the 'good cause' inquiry under Rule 16(b)(4) is whether the party seeking to modify the scheduling order can show that it has been diligent in pressing its claims but despite its diligence could not reasonably have met the scheduling deadline.").

***Second***, while the importance of the motion to dismiss initially appeared serious in that McDonald's is seeking leave to file a motion to dismiss premised on this Court's lack of subject matter jurisdiction, upon closer review the Court has determined that McDonald's failed to present

the relevant law.[4] Contrary to McDonald's suggestion, the Court's jurisdiction over this case is not implicated, which further supports a finding that good cause does not exist to grant McDonald's motion.

As the Federal Circuit has "made clear," the issue of "whether one qualifies as a patentee under 35 U.S.C. § 281 is a statutory prerequisite to the right of relief in a patent infringement action, but does not implicate the district court's subject matter jurisdiction." *Schwendimann v. Arkwright Advanced Coating, Inc.*, 959 F.3d 1065, 1071 (Fed. Cir. 2020) (citing *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1299 (Fed. Cir. 2019)). Instead, the Federal Circuit has "recognized that intervening Supreme Court precedent made clear that [the Federal

---

[4] McDonald's motion cited several cases—none of which addresses the rights held by patent assignees. At the pretrial conference, the Court asked McDonald's why it had failed to cite recent Federal Circuit cases that appeared to be directly on point. McDonald's responded that it knew about these cases and did not cite them in their motion "because those cases deal with statutory standing and not constitutional standing. And, therefore, they're not the same issue that we're dealing with in this case of whether Fall Line owns any single right in the patent at all." Docket No. 340 at 95:3–19. But these cases are on point. When the Court questioned counsel for McDonald's further, counsel responded that "Federal Circuit's precedent is if a prior holding has not been reversed en banc, we go with the older case law. We don't go with the newer stuff. So unless it's directly on point in reversing en banc a prior decision, it's not relevant to the issue here. What's relevant and what dictates the holing [sic] is the prior case law from the Federal Circuit that has not been overturned . . . ." *Id.* at 95:20–96:10. McDonald's argument poses a novel argument. Nonetheless, *Lone Star* makes the present state of the law clear: "Where intervening Supreme Court precedent makes clear that our earlier decisions mischaracterized the effects of [Section] 281, we are bound to follow that precedent rather than our own prior panel decisions." *Lone Star*, 925 F.3d at 1235 (citing *Troy v. Samson Mfg. Corp.*, 758 F.3d 1322, 1326 (Fed. Cir. 2014) ("It is established that a later panel can recognize that the court's earlier decision has been implicitly overruled as inconsistent with intervening Supreme Court authority.")).

Counsel is advised to review their obligations under Federal Rule of Civil Procedure 11(b) ("By presenting [a] written motion or other paper—whether by signing, filing, submitting, or later advocating it—an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed ***after an inquiry reasonable under the circumstances***: (1) it is not being presented for any improper purpose . . . ; (2) the claims, defenses, and other legal contentions are ***warranted by existing law*** . . . ; (3) the factual contentions have evidentiary support or . . . will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or . . . are reasonably based on belief or a lack of information.")

Circuit's] earlier decisions treating the prerequisites of the Patent Act as jurisdictional were wrong." *Id.* (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)). Thus, subject matter jurisdiction is not implicated where there is a question whether a party possesses all substantial rights in a patent. *Lone Star Silicon Innovations LLC*, 925 F.3d at 1235–36. And so long as a plaintiff alleges facts that support an arguable case or controversy under the Patent Act, a district court has both the statutory and constitutional authority to adjudicate the matter. *Id.* at 1235 (citing *Lexmark*, 572 U.S. 118, 128 n.4).[5]

At the pretrial conference, counsel for McDonald's argued that their best case supporting their position that Fall Line lacks constitutional standing to bring this case is *In re Cirba Inc.*, No. 2021-154, 2021 WL 4302979 (Fed. Cir. Sept. 22, 2021). Docket No. 340 at 69:3–20. But the facts at issue in *Cirba* are notably distinct from the facts at issue here. In *Cirba*, the Federal Circuit denied a petition for mandamus after the district court granted a motion to dismiss upon finding that a bare licensee, without exclusionary rights, lacked constitutional standing. *In re Cirba Inc.*, 2021 WL 4302979, at * 4–5 (distinguishing the rights of patentees and licensees). In reaching its decision, the Federal Circuit explained that because the plaintiff did not have a right to exclude "[i]t follows . . . that [plaintiff] lacks any ***statutory*** right under 35 U.S.C. § 281." *Id.* at *4.

Here, Fall Line is not a licensee—it is a patentee, as a successor in title to the patent, within the meaning of 35 U.S.C. § 281—and the issue at hand is whether Fall Line lacks ***statutory*** rights under 35 U.S.C. § 281. As explained in the *Schwendimann* opinion:

---

[5] The Court notes that, even before the Supreme Court issued its *Lexmark* decision, defects in patent assignments caused by clerical errors in assignments did not necessarily implicate a court's subject matter jurisdiction. *See generally,* Annotated Patent Digest (Matthews) § 9:45.50, *Legal title when complaint is filed—Mistakes in an Assignment* (June 2023 Update).

> Under Title 35, only a "patentee" is permitted to pursue a patent infringement action, 35 U.S.C. § 281. A "patentee" includes "not only the patentee to whom the patent issued but also the successors in title to the patentee." 35 U.S.C. § 100(d). "If the party asserting infringement is not the patent's original patentee, the critical determination regarding a party's ability to sue in its own name is whether an agreement transferring patent rights to that party is, in effect, an assignment or a mere license." *Lone Star*, 925 F.3d at 1229 (internal quotation marks and citation omitted). "[A]n assignee is the patentee and has standing to bring suit for infringement in its own name." *Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1093 (Fed. Cir. 1998) (citing 35 U.S.C. § 100(d)).

*Schwendimann*, 959 F.3d at 1071.

Here, as required in view of *Lone Star*, Fall Line's complaint alleges facts that support an arguable case or controversy under the Patent Act. Fall Line alleges that it "is the owner of the '748 Patent, with all substantive rights in and to that patent, including the sole and exclusive right to prosecute this action and enforce the '748 Patent against infringers, and to collect damages for all relevant times." Docket No. 1, ¶ 10. Subject matter jurisdiction is not implicated here. *See Lone Star Silicon Innovations LLC*, 925 F.3d at 1235–36.

***Finally***, the third and fourth factors also weigh against granting McDonald's leave to file this motion out of time. Trial is less than one week away—the prejudice of allowing McDonald's to raise a factual issue based on information that was publicly known and could have been raised years ago is high. A continuance here would also be highly prejudicial to Fall Line. Accordingly, it is

**ORDERED** that McDonald's motion for leave to file their motion to dismiss (Docket No. 325) is **DENIED** for failure to show good cause. Additionally, because the Court's subject matter jurisdiction is not called into question by McDonald's motion, the Court declines to consider the merits of any argument relating to ownership at this time. Moreover, McDonald's sought no relief


other than dismissal. Following trial, if this issue has not been rendered moot, McDonald's may seek relief, if appropriate.[6]

**So ORDERED and SIGNED this 11th day of July, 2023.**

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE

---

[6] The Court has not considered the merits of McDonald's factual arguments relating to Fall Line's assignment. Based on McDonald's admitted failure to investigate this issue during discovery and Fall Line's representations at the hearing, it is possible that under the governing law, Fall Line's assignment could be free from defect and that no correction is needed. McDonald's should carefully review the facts and the law, including whether the alleged defect is curable, before seeking the Court's involvement. Further, to the extent that a defect may be present, there may be avenues for resolving this issue that do not require the Court's involvement. For example, in cases addressing defects in assignments caused by honest, good faith mistakes, courts in this district have noted that such issues of statutory "standing can be cured by a nunc pro tunc assignment . . . ." *See, e.g.*, *Sw. eFuel Network, L.L.C. v. Transaction Tracking Techs., Inc.*, Civ. Action No. 2:07-CV-311-TJW, 2009 WL 4730464, at *2 (E.D. Tex. Dec. 7, 2009). This has not changed in the wake of the *Lexmark* decision. *See Schwendimann*, 959 F.3d at 1074 (noting "When a court reforms a contract, it simply assures that the written instrument properly reflects the parties' agreement. The agreement was effective when made, not as of the date of the reformation. The written instrument requirement in [35 U.S.C.] § 261 does not define when the agreement occurs, it merely requires that some writing confirm the fact of assignment. By virtue of the reformation, the written instrument was corrected nunc pro tunc, to the point of the assignment.").